UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| CORNELIUS CARTER, | ) | CASE NO. C15-1486 RSM |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER GRANTING MOTION FOR |
| | ) | SUMMARY JUDGMENT |
| THE BOEING COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I.      INTRODUCTION

This matter comes before the Court on Defendant's Motion for Summary Judgment. Dkt. #14.  Defendant asks this Court to dismiss all of Plaintiff's claims on the basis that no reasonable juror could conclude that Defendant treated Plaintiff less favorably because of his race, or that purported "stray remarks" were sufficiently severe and pervasive to create a hostile work environment.  *Id.* at 2.  Plaintiff opposes the motion, arguing that questions of material fact preclude judgment in favor of Defendant.  Dkt. #25.  For the reasons set forth below, the Court disagrees with Plaintiff and GRANTS Defendant's motion.

## II.     EVIDENCE CONSIDERED ON THIS MOTION

As an initial matter, the Court addresses the evidence it considered in setting forth the background below, and in deciding this motion.  Both parties have moved to strike certain evidence, and the Court has reviewed all of the Declarations and Exhibits thereto for

ORDER
PAGE - 1

admissibility as well.  With respect to the evidence presented on this motion, the Court finds as follows:

 1.  *Declaration of Cornelius Carter*

Plaintiff, Cornelius Carter, has submitted a Declaration with Exhibits in opposition to Defendant's motion.  Dkt. #27.  That Declaration is not made under the penalty of perjury.  *See* Dkt. #27 at 1 and 14.  Moreover, Mr. Carter fails to state anywhere in his Declaration that his statements are based on personal knowledge, or that they are true.  *Id.*[1]  Declarations must be signed and certified as true under penalty of perjury.  *See* 28 U.S.C. § 1746.  Unsworn declarations must at least substantially comply with the requirements of 28 U.S.C. § 1746.  *See Commodity Futures Trading Comm'n v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1112 (9th Cir. 1999).  Mr. Carter's does not substantially comply with 28 U.S.C. § 1746 because it fails to contain and certification under the penalty of perjury, or that it is even true or based on personal knowledge.  It also fails to comply with Federal Rule of Civil Procedure 56(c)(4).  ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge . . . .").  Accordingly, the Court declines to consider it on summary judgment.  *See, e.g.*, *Curtis v. Illumination* Arts, 2013 U.S. Dist. LEXIS 167456, *30, 2013 WL 6173799 (W.D. Wash. Nov. 21, 2013); *Satterwhite v. Dy*, 2012 U.S. Dist. LEXIS 29818, 2012 WL 74827, *2 (W.D. Wash. Mar. 5, 2012) (striking Declarations because they do not attest that their statements are true and correct as required by 28 U.S.C. § 1746); *see also Davenport v. Bd. of Trustees of State Ctr. Cmty. Coll. Dist.*, 654 F. Supp. 2d 1073, 1083 (E.D. Cal. 2009) striking (declarations stating only that declarant had "personal knowledge of the facts"); *Cobell v.*

---

[1]  Further, a portion of Mr. Carter's Declaration appears to be presented by someone other than Plaintiff.  In paragraph 17, the document refers to Plaintiff in the third person and is drafted as if asserted by counsel rather than by Plaintiff.  Dkt. #27 at ¶ 17.

ORDER
PAGE - 2

*Norton*, 310 F. Supp. 2d 77, 84-85 (D.D.C. 2004) (finding that a statement based on "knowledge, information and belief" was insufficient).

Likewise, the Court declines to consider the Exhibits attached to Mr. Carter's inadmissible Declaration. When ruling on a motion for summary judgment, "a trial court can only consider admissible evidence." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). "Authentication is a condition precedent to admissibility and this condition is satisfied by evidence sufficient to support a finding that the matter is what its proponent claims." *Id*. The Ninth Circuit has "repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment." *Id*. In a summary judgment motion, documents authenticated through personal knowledge must be attached to an affidavit that meets the requirements of Fed. R. Civ. P. 56, and the affiant must be a person through whom the exhibits could be admitted into evidence. *Id*. at 773-4. Mr. Carter fails to provide adequate authentication of his proposed Exhibits through his Declaration. The Declaration itself does not indicate that it is based on personal knowledge, and is not made under the penalty of perjury. While the Exhibits attached are declared to be "true and correct copies," many of the Exhibits are business documents which could not be admitted through Plaintiff and fail to contain any records custodian attestations. With respect to one group of documents, Plaintiff fails to even state they are true and correct. *See* Dkt. #27 at 14, ¶ 29. Accordingly, the Court declines to consider any of the Exhibits attached to Mr. Carter's Declaration.

### 2. *Declaration of Sib Sopheak*

Defendant has moved to strike the Declaration of Sib Sopheak submitted by Plaintiff in opposition to the instant motion. Dkt. #31 at 11-12. Like, Mr. Carter's Declaration, Mr.

Sopheak's Declaration is not made under the penalty of perjury.[2]  *See* Dkt. #30 at 1 and 6. While he does state the facts are made on personal knowledge, he does not certify they are true. *Id.*  Moreover, Plaintiff fails to cite to Mr. Sopheak's Declaration anywhere in his opposition brief.  For the same reasons noted above with respect to Mr. Carter's Declaration, the Court declines to consider Mr. Sopheak's declaration on this motion.

> 3.  *Declaration of Kyle Fleury*

Defendant has also moved to strike portions of Kyle Fleury's Declaration as irrelevant. Dkt. #31 at 12.  The Court denies this motion as moot, as the Court is able to determine the relevancy of statements made in Declarations in the context of the arguments presented by the parties.

> 4.  *Mr. Mellor's Notes*

In support of its Reply, Defendant submits a Declaration of counsel which contains an exhibit that had been "inadvertently withheld during discovery."  Dkt. #32 at ¶ 7.  The exhibit consists of two pages of handwritten notes from Al Mellor's investigation of Plaintiff's EEOC complaint.  *Id.*  Plaintiff moves to strike the exhibit from the record, declaring that these documents were "intentionally withheld" and demonstrate that Defendant "has not been playing clean in discovery."[3]  Dkt. #39.  The Court denies this motion as moot because it does not rely on the exhibit in reaching its conclusions below.

///

///

---

[2]  This is in contrast to other Declarations submitted by Mr. Carter in support of his opposition, which clearly state they are true and correct and made under the penalty of perjury.  *See* Dkts. #26 and #29.

[3]  The Court considered this motion despite the fact that it failed to comply with the requirements of Local Civil Rule 7(g).

ORDER
PAGE - 4

5.  *Declarations of Eric Bolts, Mike Chamness, Jeremy Angelshaug, Gunnar Lofstedt, Heather Bartek and Adam Fox*

Plaintiff has also moved to strike the Declarations of Eric Bolts, Mike Chamness, Jeremy Angelshaug, Gunnar Lofstedt, Heather Bartek and Adam Fox, which were filed in support of Defendant's Reply, on the basis that they constitute new evidence to which Plaintiff cannot reply.  Dkt. #39.  Plaintiff also argues that this "effectively ambushes Plaintiff's efforts to prepare for trial," an issue not before the Court on summary judgment or any other motion, and which is not explained in any manner.

As a general rule, a "movant may not raise new facts or arguments in his reply brief." *Karpenski v. American General Life Companies, LLC*, 999 F. Supp. 2d 1218, 1226 (W.D. Wash. 2014) (citing *United States v. Puerta*, 982 F.2d 1297, 1300 n.1 (9th Cir. 1992)).  Plaintiff argues that these Declarations "present new evidence and do nothing more than demonstrate that there are issues of fact related to Plaintiff's evidence."[4]  Dkt. #39 at 2.  Plaintiff does not explain what evidence is "new."  A review of these Declarations, which are from various former supervisors of Plaintiff and discuss his work attendance, reveals that they generally state what is already in the record.  *See* Dkts. #33-#38.  Plaintiff has had a full opportunity to respond to the attendance-related issues raised in this matter.  See Dkt. #25.  Accordingly, the Court denies Plaintiff's motion to strike these Declarations.

### III.   BACKGROUND

Plaintiff, Cornelius Carter, was employed by Boeing from July 2011 through June 2014, as a mechanic in Boeing's 787 manufacturing operations.  Dkt. #15, Ex. A at 78:24-79:1 and 79:19-21.

---

[4]  It is not clear to the Court why Plaintiff would want to strike evidence from the Court's consideration that allegedly demonstrates a question of fact, when that is the very thing Plaintiff is attempting to demonstrate in opposition to Defendant's motion.

ORDER

PAGE - 5

In January of 2012, Plaintiff applied for a Team Lead position on the 787 Final Assembly.  Dkt. #15, Ex. A at 144:14-145:11.  Plaintiff interviewed with three members of Defendant's management team.  *Id.* at 146:4-17.  After the panel interviewed four applicants, it recommended both Plaintiff and another applicant for the position.  *Id.* at 147:1-5.  Boeing policy requires that seniority is the deciding factor in selecting a lead when more than one employee is recommended for the position, a fact which Plaintiff concedes.  Dkt. #15, Ex. A at 148:5-9.  The other applicant had four years of seniority to Plaintiff and was selected for the position.

In 2012 and the beginning of 2013, Plaintiff received a significant amount of protected leave.  Dkt. #17 at ¶ 5.  Between July and December of 2013, Defendant's leave records reflect that Plaintiff had 8 full day unexcused absences, outside of his protected leave.  Dkt. #17 at ¶ 5, Ex. B.  Between January and June of 2014, Defendant's leave records reflect that Plaintiff had 30 full day unexcused absences, outside of his protected leave.  *Id.*

In March of 2013, the Human Resources Generalist supporting the crew on which Plaintiff worked, informed Plaintiff's supervisor, Michael Chamness, that Plaintiff had had two unexcused absences.  Dkt. #21 at ¶ 3.  Pursuant to Defendant's Puget Sound Attendance Guideline, Mr. Chamness was directed to issue a Corrective Action Memo ("CAM").  When Mr. Chamness received the CAM to issue, Plaintiff was no longer on his crew, so Mr. Chamness forwarded the CAM to Plaintiff's new supervisor, Aaron Shoemaker, to issue.  *Id.*

In February of 2014, Defendant issued a second CAM to Plaintiff for excessive unexcused absences.  Dkt. #17 at ¶ 5.

Plaintiff continued to use protected leave during the months of March and April 2014.  Dkt. #17 at ¶ 6.  He also had several unexcused absences.  *Id.*  By the second week of May,

ORDER
PAGE - 6

Plaintiff had exhausted his FMLA leave.  *Id.*  According to Defendant, by June 1, 2014, Plaintiff was no longer reporting his absences to Defendant; rather, he simply stopped coming to work.  *Id.*  Plaintiff reported to work on one day in June 2014 – June 4th.  *Id.* at ¶ 7.  He never returned.  After several unsuccessful attempts to reach Plaintiff directly and through his union representative, and after 12 consecutive days of unexcused absences, Plaintiff terminated Plaintiff's employment on June 20, 2014.  *Id.*

In addition to full day unexcused absences, Plaintiff's supervisors often complained that during his shifts, Plaintiff would disappear and could not be located.  *See* Dkts. #19 at ¶ 2, #20 at ¶ 2, #21 at ¶ 2, #33 at ¶ 4, #34 at ¶ 2 and #37 at ¶ 2.  Supervisor Jeremy Angelshaug reported to Defendant's Human Resources Department in August 2013 that Plaintiff was frequently leaving his work area without clocking out.  Dkt. #20 at ¶ 2.  In February 2014, Supervisor Adam Fox complained to Human Resources that Plaintiff had been out of his work area without authorization on several days in December 2013 and January 2014.  Dkt. #18 at ¶ 4.  After a Human Resources investigation in to Mr. Fox's complaint, the investigator concluded that Plaintiff had failed to perform work for a total of 14 hours and 30 minutes during a three-day period in which Plaintiff had reported to work each day.  Dkt. #18, Exs. B and C.  As a result, Plaintiff received a CAM and a three-day unpaid suspension in March of 2014.  Dkt. #18 at ¶ 5.

In April 2013, Plaintiff filed a complaint with Defendant's Human Resources department.  Dkt. #18 at ¶ 2.  Plaintiff's complaint focused on his supervisor at the time, Mr. Chamness, stating that Mr. Chamness had insulted and embarrassed him and had made negative race-related comments.  Dkt. #18 at ¶ 2, Ex. A.  Plaintiff also stated that he believed that Mr. Chamness was retaliating against him for a previous interaction between them and

ORDER
PAGE - 7

involving Human Resources. *Id.* He stated that he had made a previous report to HR about Mr. Chamness, although Defendant denies ever having received such a report. *Id.* Human Resources Generalist Heather Bartek emailed Plaintiff for further information. Dkt. #18 at ¶ 3. Plaintiff had been on leave at the time, but responded when he returned, and offered to meet with Ms. Bartek to discuss his complaints. *Id.* When Ms. Bartek responded and attempted to schedule such a meeting, Plaintiff never responded. Defendant ultimately closed the complaint. *Id.*

After receiving his CAM in June 2013, Plaintiff filed an EEOC complaint alleging race discrimination and retaliation. Dkt. #16 at ¶ 2, Ex. A. Plaintiff complained that Mr. Chamness had treated him negatively, including harassment based on his race, and alleged that he had not received a promotion to a Lead position because of retaliation by Mr. Chamness. *Id.* He alleged that he had complained to HR about the situation, but that nothing had been done. *Id.* He also alleged that he had received a CAM in April 2013 in retaliation by Mr. Chamness. *Id.* After an investigation by Defendant's EEO investigator, Defendant concluded that Plaintiff had not suffered discrimination or retaliation by Mr. Chamness, that even if Mr. Chamness had made negative comments to Plaintiff they were not motivated by Plaintiff's race, Plaintiff's seniority was the reason that he had not been promoted to the Lead position, Plaintiff received a CAM for having two unexcused absences in a 60-day period per Defendant's Puget Sound Attendance Guidelines, and Defendant had no record of any complaints from Plaintiff prior to April of 2013. Dkt. #16 at ¶ 3.

In April of 2014, Plaintiff met with HR to make a statement about his whereabouts during his shift. Dkt. #17 at ¶11. A few days later, he submitted another complaint to HR. *Id.*, Ex. D. He alleged that a co-worker had been spreading rumors about him being gone from

work in "rehab for heroin" and that he was about to be fired.  *Id.*  He also alleged that Mr. Chamness had been sharing confidential information about Plaintiff with Mr. Prettyman.  He said that had been occurring since Christmas break of 2013.  *Id.*  He also alleged that Mr. Chamness had been subjecting him to a hostile work environment, and, as an example, asserted that Mr. Chamness and Mr. Prettyman "were noticed giving [him] dirty looks and saying things that were not professional or ethical."  *Id.*  He alleged that outside of work his doctor had received insulting phone calls and that his family had been told rumors.  He stated that a manager named Gunnar stated, "man, I thought you were fired," every time he saw Plaintiff. *Id.*  He stated that he wanted to be transferred to get away from the torment, that he was in therapy and that his health was suffering because of the treatment by Mr. Chamness and others. *Id.*

Human Resources Generalist Kym Van Duren followed up on Plaintiff's complaint. Dkt. #17 at ¶ ¶ 11-12.  They finally met in June, at which time, Plaintiff supplemented his complaint, alleging that upon his return to work in April, his car was scratched and he had found a sticky note on his car telling him to "pack it up and head South country boy."  Dkt. #17 at ¶ 12, Ex. E.  He also alleged he had found a similar note on his car in March that said, "you should go back to Africa you nigger."  *Id.*  Plaintiff did not produce the notes to Ms. Van Duren, and they have apparently since been destroyed.  *Id.* and Dkt. #15, Ex. A at 287:1-14.

Plaintiff also complained that he was aware of comments being made by a co-worker named Nick Storle that he (Storle) was going to come to work and shoot black people.  Dkt. #17, Ex. E.  He said that Mr. Storle did not make these comments to him, but they had been posted on face book; however, he had not actually seen the messages.  Dkt. #15, Ex. A at

230:11-15.  Plaintiff has since stated that he had only met Mr. Storle on one occasion, and that Mr. Storle had treated him respectfully.  *Id.* at 225:24-226:8.

On August 13, 2015, Plaintiff filed a Complaint for Damages in Snohomish County Superior Court, alleging state law claims against Defendant under Washington's Law Against Discrimination ("WLAD").  Dkt. #1, Ex. A.  Specifically, Plaintiff claims hostile work environment, disparate treatment, unlawful retaliation, and actual and/or constructive discharge.  *Id.*  Defendant removed the action to this Court on September 16, 2015.  Dkt. #1. Trial is currently scheduled for October 17, 2016.  Dkt. #10.

## IV.    DISCUSSION

### A. Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).   In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial."  *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (*citing Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).  Material facts are those which might affect the outcome of the suit under governing law.  *Anderson,* 477 U.S. at 248.

The Court must draw all reasonable inferences in favor of the non-moving party.  *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994).  However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Further, "[t]he mere existence of a scintilla of evidence in

support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 251.

## B. Negligent Infliction of Emotional Distress

The Court first notes that Plaintiff has conceded "dismissal of his claim for Negligent Infliction of Emotional Distress."  Dkt. #25 at 2 fn. 1.  It is not clear why Plaintiff made this concession, as no claim for negligent infliction of emotional distress was ever raised in his Complaint.  *See* Dkt. #1, Ex. A.  In any event, to the extent Plaintiff attempted to raise such a claim, it is now dismissed.

## C. Hostile Work Environment

Plaintiff next alleges that he suffered a hostile work environment, arguing that the "hostile work environment in this case consists of a plethora of acts of the most extreme racial conduct."  Dkts. #1, Ex. A and #25 at 13.  RCW 49.60.180(3) provides that an employer may not discriminate against any person due to the person's race or color.  To establish a hostile work environment claim, a plaintiff must show that "'(1) the harassment was unwelcome, (2) the harassment was because [plaintiff was a member of a protected class], (3) the harassment affected the terms and conditions of employment, and (4) the harassment is imputable to the employer.'"  *Loeffelholz v. Univ. of Wash.*, 175 Wn.2d 264, 275, 285 P.3d 854 (2012) (alteration in original) (quoting *Antonius v. King County*, 153 Wn.2d 256, 261, 103 P.3d 729 (2004)).  Washington courts permit hostile work environment claims "based on acts that individually may not be actionable but together constitute part of a unified whole comprising a hostile work environment."  *Antonius*, 153 Wn.2d at 268.  This is because these claims "'are different in kind from discrete acts' and '[t]heir very nature involves repeated conduct.'"  *Id.* at

ORDER
PAGE - 11

264 (alteration in original) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)).

The claim of hostile work environment is aimed at redressing the wrongs that occur, "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993) (internal citations omitted). In this case, Mr. Carter alleges that he endured unwelcome harassment that was because of race. Mr. Carter testified that his supervisor, Mr. Chamness, regularly referred to him as "boy," and made a comment about "cracking the whip" to get him to work. Dkt. #15, Ex. A at 162:1-21. He testified that another supervisor, Gunnar Lofstedt, would "defame" him by asking whether he still worked there in front of the other crew members. Dkt. #15, Ex. A at 173:6-23. He further testified that co-worker Thomas Prettyman would refer to him as "boy." Dkt. #15, Ex. A. at 201:20-202:13. For these reasons, Plaintiff can establish that he meets the first two criteria for establishing a *prima facie* case as to hostile work environment.

Defendant contends, however, that Plaintiff cannot establish that the harassment was widespread enough to alter his terms and conditions of employment and that the harassment cannot be imputed to Defendant. Dkt. #14 at 20-24. Defendant also reminds the Court that merely offensive behavior will not suffice. *Id.*

    1. *Harassment that Can be Imputed to Boeing*

      a. <u>Manager Harassment</u>

Defendant first argues that it is not liable for any alleged manager harassment. Dkt. #14 at 21-22. When evaluating whether or not an employer is liable for the harassment of its

ORDER
PAGE - 12

employees by supervisors, the U.S. Supreme Court has adopted a vicarious liability standard. *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998); *Washington v. Boeing Co.*, 105 Wn. App. 1, 12, 19 P.3d 1041 (2000).   The justification for heightened liability when supervisors are responsible for the creation of a hostile work place is that supervisors are able to use their position within an organization to bring the weight of the organization to bear on an employee.   *Holly D. v. California Institute of Technology*, 339 F. 3d 1158, 1173 (2003).

In *Glasgow v. Georgia-Pacific Corp.,* Washington's Supreme Court held that where an owner, manager, partner, or corporate officer personally participates in the harassment, the harassment is imputed to the employer.   Wn.2d at 401, 407, 693 P.2d 708 (1985).   However, where the person harassing the worker is not in management, the employer is not held responsible for the discriminatory work environment created by a plaintiff's supervisor or co-worker unless the employer (1) authorized, knew, or should have known of the harassment and (2) failed to take reasonably prompt and adequate corrective action.   *Glasgow*, 103 Wn.2d at 407.

Plaintiff alleges that the supervisors who made racially motivated comments toward him were Mr. Chamness and Mr. Lofstedt.   Assuming for purposes of this motion that Plaintiff's allegations are true, liability cannot be imputed to Boeing because the numerous managers who supervised Plaintiff do not occupy sufficiently high level positions within Boeing to be considered its alter ego.   *Washington*, 105 Wn. App. at 12.   Second, the record demonstrates that when Boeing received complaints from Plaintiff regarding Mr. Chamness, Boeing took prompt action to investigate those Complaints as further discussed below.

*///*

ORDER
PAGE - 13

b. <u>Co-Worker Harassment</u>

Under the WLAD, non-alter ego supervisors are treated like co-workers in that the employer's liability cannot be vicarious, but can only be direct (due to its own negligence) if it (1) authorized, knew, or should have known of the harassment and (2) failed to take reasonably prompt and adequate corrective action. *Glasgow*, 103 Wn.2d at 407; *see also EEOC v. Evans Fruit Co.*, 2012 U.S. Dist. LEXIS 169008, *5 (E.D. Wash. Nov. 27, 2012). Thus the Court examines the alleged statements and conduct of Mr. Chamness, Mr. Lofstedt and Mr. Prettyman in this context.

The evidence in the record demonstrates that Defendant maintains, utilizes and disseminates a comprehensive anti-harassment policy. Dkt. # 17 at ¶¶ 4 and 10 and Ex. C thereto. Moreover, to the extent that Plaintiff reported the alleged harassment to Defendant, it took prompt action to investigate the complaints. Dkts. #15 at ¶ 5 and Ex. D thereto, #17 at ¶¶ 11-12, #18 at ¶¶ 2-5 and Ex. C thereto, and #36 at ¶ 2. When Plaintiff complained about alleged Facebook posts by Mr. Storle and the alleged sticky notes left on his car, Defendant attempted to investigate, but Plaintiff failed to assist in those investigations. *Id.* Likewise, when Plaintiff complained about Mr. Prettyman's alleged comments, Plaintiff did not respond to Defendant's attempts to investigate. *Id.* Plaintiff has failed to present any evidence raising an issue of material fact with respect to Defendant's attempts to investigate and correct the alleged actions. Further, Plaintiff's complaints to Defendant do not include any reference to him being called "boy" or "nigger." *See* Dkt. #15, Ex. A at 204:7-24.[5]

///

///

_____

[5]  Although the Court has struck Plaintiff's exhibits as inadmissible, even if it had considered them, they fail to report any use of the alleged racial slurs. *See* Dkts. #27-12, #27-13, #27-15, #27-17, #27-18 and #27-19.

ORDER
PAGE - 14

2.   *Conduct Altering Terms of Employment*

Plaintiff has also failed to present sufficient evidence raising any genuine issue of fact as to whether the conduct of which he complains was severe and pervasive.  In fact, much of his own deposition testimony contradicts his allegations.  For example, with respect to Mr. Storle's alleged Facebook posts, Plaintiff testified that he never saw the posts and that on the one occasion he interacted with Mr. Storle, Mr. Storle was respectful.  Dkt. #15, Ex. A at 225:24-226:8 and 230:11-15.  Similarly, Plaintiff testified that he told Mr. Chamness he did not appreciate certain comments he had made, and Mr. Chamness never said them again.  Dkt. #15, Ex. A at 290:1-291:18.  For all of these reasons, Plaintiff fails to make a *prima facie* claim of hostile work environment, and summary judgment in favor of Defendant is appropriate.

3.   *Statute of Limitations*

Finally, the Court notes that Plaintiff, for reasons known only to him and his counsel, has submitted lengthy briefing regarding the statute of limitations of hostile work environment claims, and arguing that such statute of limitations should not apply to his claims.  Dkt. #25 at 15-17.  Defendant has not raised a statute of limitations defense; thus, Plaintiffs arguments are moot.  Further, it is not even clear to the Court that this portion of Plaintiff's response actually pertains to Plaintiff.  In support of his arguments he refers to conduct occurring in 2002 and 2007.  *Id.*  Yet, Plaintiff was not employed at Boeing until 2011.  Accordingly, Plaintiff's statute of limitations arguments have no bearing on his instant claim, and summary judgment remains appropriate in favor of Defendant.

**D.  Disparate Treatment**

Under WLAD, disparate treatment occurs when employers treat certain employees "less favorably" than others because of race, color, or other protected status.  *Alonso v. Qwest*

ORDER
PAGE - 15

*Commc'ns Co., LLC*, 178 Wn. App. 734, 743, 315 P.3d 610 (2013).   In order to make out a *prima facie* case for racial discrimination based on disparate treatment a plaintiff must demonstrate that he: 1) belongs to protected class; 2) was treated less favorably in terms of the conditions of his employment; 3) than a similarly situated, nonprotected employee.   The Plaintiff must also show that he and the comparator were doing substantially the same work. *Washington v. Boeing*, 105 Wn. App. 1, 13, 19 P.3d 1041 (2001).   Washington has, for the most part, adopted the burden-shifting approach articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), making the test for disparate treatment under the WLAD similar to the federal test for disparate treatment under Title VII. *Hill v. BCTI Income Fund-I*, 144 Wn. 2d 172, 180, 23 P.3d 440 (2001).   Once the plaintiff has demonstrated that he can make out a *prima facie* case for disparate treatment, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the way the employee was treated. *Johnson v. Dep't of Soc. & Health Servs.*, 80 Wn. App. 212, 227, 907 P.2d 1223 (1996).   At this point, the burden falls to the plaintiff to show that the employer's rationale for its actions is pretextual. *Id.*   An employee can demonstrate pretext by submitting evidence that a non-minority comparator committed infractions that were similarly serious, but was not disciplined to the same degree as the minority employee. *Id.*   To survive summary judgment, the employee must show that a reasonable jury could find that the employee's "protected trait was a substantial factor motivating the employer's adverse actions." *Scrivener v. Clark Coll.*, 181 Wn.2d 439, 445, 334 P.3d 541 (2014).   The plaintiff bears this burden of production and may use either direct or circumstantial evidence. *Id.*

Plaintiff is an African American man who meets the definition of "protected class" for purposes of the *prima facie* test.   He alleges that he failed to receive a promotion, received

ORDER
PAGE - 16

several CAMS, and was ultimately terminated because of his race.  Plaintiff has not, however, shown that similarly situated employees who are not members of the protected groups were treated more favorably.  With respect to the promotion to Lead, plaintiff acknowledged that the person who received the position had more seniority that he had, and that the union used seniority to award such promotions.  Dkt. #15, Ex. A at 144:14-148:16.  With respect to the CAMs and the termination, Plaintiff does not identify any comparators or explain how they were treated more favorably in similar circumstances.  Further, the evidence demonstrates that Plaintiff had numerous unexcused absences, and that eventually he stopped coming to work at all.  Therefore, Plaintiff's allegations are insufficient to raise an inference that he was adversely disciplined because of his race, or that he failed to receive a promotion based on his race.  *McDonnell Douglas*, 411 U.S. at 802.  As a result, his disparate treatment claims must be dismissed.

### E.  Retaliation

To establish a *prima facie* case of retaliation, plaintiff must show that (1) he engaged in protected activity, (2) he suffered an adverse employment action, and (3) there is a causal link between the two.  *Wallis v. J. R. Simplot Co.*, 26 F.3d 885, 891 (9th Cir. 1994).  "Thereafter, the burden of production shifts to the employer to present legitimate reasons for the adverse employment action.  Once the employer carries this burden, plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext.  Only then does the case proceed beyond the summary judgment stage."  *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (citations omitted).  "Because Washington courts look to interpretations of federal law when analyzing retaliation claims," the Court examines Plaintiff's current claim under federal law.  *Little v. Windermere Relocation, Inc.*, 301 F.3d

ORDER
PAGE - 17

958, 969 (9th Cir. 2002) (citing *Graves v. Dept. of Game*, 76 Wn. App. 705, 887 P.2d 424 (1994)).

In his Complaint, Plaintiff alleges that he suffered retaliation after he lodged a complaint with Boeing about his supervisor.   Dkt. #1, Ex. A at ¶ 5.11, *et seq.*   However, in response to Defendant's Motion for Summary Judgment, Plaintiff did not provide an admissible, supporting affidavit, and has failed to cite to any record evidence.   *See* Dkt. #25 at 17-18.   Plaintiff cannot, at this stage of the litigation, rely on the allegations of his Complaint or the unsupported argument of counsel.   Moreover, as discussed above, there are legitimate non-discriminatory reasons for denying a Lead position to Plaintiff, issuing CAMs for unexcused absences, and for ultimately terminating Plaintiff's employment when he stopped coming to work.   Accordingly, Defendant is entitled to summary judgment on his retaliation claim.

**F.  Discharge in Violation of Public Policy**

Finally, Plaintiff alleges that he was wrongfully discharged in violation of public policy. Dkt. #25 at 2 fn. 1.   To maintain a common law claim for wrongful discharge, a plaintiff must prove four elements: (1) the existence of a clear public policy, (2) that discouraging the conduct in which the plaintiff engaged would jeopardize the public policy (the "jeopardy" element), (3) that the conduct caused the dismissal, and (4) that the defendant has not offered an overriding justification for the dismissal.   *Lee v. Rite Aid Corp.*, 917 F.Supp.2d 1168, 1175 (E.D. Wash. 2013) (quoting *Cudney v. ALSCO, Inc.*, 172 Wash.2d 524, 529, 259 P.3d 244 (2011)).   Plaintiff appears to argue that he was unlawfully terminated after he reported alleged discrimination to the EEOC.   Dkt. #25 at 19-21.   This claim must be dismissed as it is duplicative of his discrimination claim.   Such duplicative claims are improper under Washington law.   *See Gamble v. Pac. Nw. Reg'l Council of Carpenters*, 2015 WL 402782, at *6 (W.D. Wash. Jan 29,

ORDER
PAGE - 18

2015) (holding that a common law tort claim that is predicated on the same facts as a discrimination claim is duplicative and must be dismissed); *Hochberg v. Lincare, Inc.* 2008 U.S. Dist. LEXIS 34638, at *20-*21 (E.D. Wash. Apr. 28, 2008) (dismissing a wrongful discharge claim as duplicative of WLAD claim).  Accordingly, summary judgment in favor of Defendant is appropriate.

## V.    CONCLUSION

Having reviewed Defendant's motion, Plaintiff's Response thereto, Defendants' Reply in support thereof, and the remainder of the record, the Court hereby ORDERS:

1) Defendant's Motion for Summary Judgment (Dkt. #14) is GRANTED.

2) Plaintiff's claims are dismissed in their entirety.

3) This matter is now CLOSED.

DATED this 2nd day of September 2016.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 19